131 Ind. App. 400 (1961)
171 N.E.2d 262
TOWN OF KEWANNA WATER WORKS
v.
INDIANA EMPLOYMENT SECURITY BOARD ET AL.
No. 19,516.
Court of Appeals of Indiana.
Filed January 9, 1961.
*402 Donald F. Bowen, Bowen, Kivett, Northam & Clancy, of Indianapolis, Howard T. Batman, Marshall, Batman & Day, of Terre Haute, and Kenneth J. Luckett, of English, for appellants.
Edwin K. Steers, Attorney General, and Keith Campbell, Deputy Attorney General, for appellees.
BIERLY, J.
The Town of Kewanna Water Works of Kewanna and the Town of English Municipal Water Works of English, both in Indiana, appellants herein, perfected this appeal from an adverse decision rendered by one Honorable Douglas J. Morris, Liability Referee, as representing the Indiana Employment Security Board. The holding of the Referee, as objected to by the appellants, was to the effect that the employees of appellants were subject to the Indiana Employment Security Act, and that services performed by the employees during second quarter of 1959 came within the purview of said Act requiring contributions to Employment Security Fund.
*403 The Director of the Employment Security Division notified appellant, Town of Kewanna Water Works, on July 30, 1959, that an assessment had been levied upon its payroll of $405.00 for said second quarter in the sum of $12.08 representing contributions, interest and penalty alleged due and unpaid. Furthermore, the said Director notified the town of English Municipal Water Works on September 11, 1959, that an assessment had been levied upon its payroll of $874.00 for said second quarter in the sum of $26.20 representing contribution, interest and penalty alleged due and unpaid. Both appellants filed protests against said assessment.
As grounds for said protests, appellant, Town of Kewanna Water Works, alleged that it has employed only one half time employee, while in its protest, Town of English Municipal Water Works alleged it has employed only two employees. Both appellants asserted they were not within the purview of the Act.
The appellants  protestants  maintained that the Employment Security Act as amended by Section 803, subsection (t) does not include a municipally owned public utility liable to come under the provisions of said Act, unless said utility has in its employ four or more employees. Each of said appellants requested a hearing. The protest of each appellant challenges the construction of the statutes as applied and invoked by the Director in rendering the assessments in question as heretofore set out. Section 701 of the Act (Burns' 1959 Suppl. 52-1531); Acts 1947, Ch. 208, Sec. 701, p. 673; 1955, Ch. 317, Sec. 2, p. 971; also Sec. 801 of the Act (Burns' 1951 Repl. 52-1532); Acts 1947, Ch. 208, Sec. 801, p. 673.
The decision of the Liability Referee was to the effect that the amending Act of 1959 embraced municipal utilities employing fewer than four employees, and *404 thus the appellants  protestants  are subject to the provisions of the Act and thereby requiring contributions by the appellants into the fund.
The paramount issue involved in this appeal is the interpretation of Sec. 801(a) and Sec. 803 (t) of the Indiana Employment Security Act. The controversial question arose over the meaning of Chapter 305 of the Acts of 1959 more particularly as to whether the amendment thereto required contributions from municipally owned public utilities employing less than four persons.
A careful search fails to disclose any decision by an appellate tribunal in reference to the interpretation of this amendment.
In the construction of statutes, this court is bound by those definitions which are set out in the act and in this particular amendment, unless it appears that they are inconsistent or are repugnant to the manifest intention of the Legislature.
In construing an Act of the Legislature, its intention from a consideration of the Act, as a whole will prevail over the literal meaning of the terms used therein. Stated differently it appears that the spirit or intention of the law prevails over the letter thereof. Brown v. Grzeskowiak (1951), 230 Ind. 110, 101 N.E.2d 639; Combs, Auditor et al. v. Cook (1958), 238 Ind. 392, 151 N.E.2d 144. (Numerous other cases may be cited.) It likewise has been held that in a construction of a statute, the important object is to seek, determine and carry out the purpose and intent of the Legislature, and in order to determine that aim, the language used should first be considered in its literal and ordinary signification, and, if by giving the words used such a signification, the meaning of the whole instrument is rendered doubtful, or is made to *405 lead to contradictions or absurd results, the intent, as collected from the whole instrument, must prevail over the literal import of the terms and control the strict letter of the law. Decatur Twp. v. Board of Comrs. of Marion Co. (1942), 111 Ind. App. 198, 38 N.E.2d 479. Northern Indiana R. Co. v. Lincoln Nat. Bank (1910), 47 Ind. App. 98, 92 N.E. 384. (Other cases may be cited.)
It has likewise been held that the rule of construction according to the spirit of the law is especially applicable where adherence to the letter of the law would lead to injustice, absurdity, or contradictory provisions. City of Indianapolis v. Evans (1940), 216 Ind. 555, 24 N.E.2d 776; Peoples Trust & Savings Bank v. Hennessey (1926), 106 Ind. App. 257, 153 N.E. 507.
Furthermore, we conclude that in the interpretation of statutes and their meaning, it is imperative that the interpreter does not twist words so as to express what he concludes should have been expressed, also, when a statute is clear and unambiguous, a court has an imperative duty not to substitute or change its meaning.
It appears that Section 803, subsection (a) of the 1959 Amendatory Act (Burns' 52-1532b) was added for the sole purpose of including municipally owned public utilities previously not subject to the Employment Security Act. The amendment inserted the words "other than service performed in the employ of a municipally owned public utility as hereinafter defined" in subsection (t) which reads:
"A `municipally owned public utility' means a public utility, including but not limited to, any gas, electric, water, heat and fuel, transportation, filtration and sewage disposal works, plant, or system, operated wholly or partly from earnings or *406 revenues and which are owned, managed, operated or controlled by a political subdivision or by a body politic or by a public entity or by any public body or by any instrumentality of any of them; the phrase is intended to include all public utilities other than those privately owned and operated; the phrase includes any public utility owned or operated under the terms of a trusteeship for the benefit of any political subdivision or body politic or public body or public entity or the residents thereof. An `employee' of a municipally owned public utility includes any natural person hired as an employee of a municipally owned public utility and it includes foremen, supervisors, and superintendents and their assistants but it excludes executives and independent contractors; all employees of any municipally owned public utility shall be entitled to receive unemployment compensation benefits to the same extent as any employee of a private employer, each such municipally owned public utility shall be subject to this act [§§ 52-1525  52-1563b] as an employer and shall pay all taxes and contributions established, levied and assessed pursuant to this Act or any other Act, State or Federal, as may be necessary to qualify the employees thereof for unemployment compensation benefits. The Indiana Employment Security Division, its board, director, officers and subordinates, shall have the same authority and duty in regard to municipally owned public utilities and their employees as it and they have to private employers and their employees." (Our emphasis.)
Appellees' interpretation is to the effect that Subsection (t) means that all employees of a municipally owned public utility are subject to the provisions of the Indiana Employment Security Act regardless as the number of employees.
As we have heretofore stated by the terms of the Act to which the 1959 Act was amendatory, private employers were not required to come within the purview *407 of the Employment Security Act unless the employer had four or more employees.
It appears to us that Subsection (t) as so stated was not intended to set off the municipally owned public utility as an especial exception to the Act, but rather the Legislature had for its purpose in enacting Subsection (t) adding municipally owned public utilities to that category of organizations set forth in the original Employment Security Act and on a similar basis as relating to employers and employees.
On the other hand the appellees argue that the words "all" and "any" as used in this Subsection (t) entitles any and all employees irrespective of number of a municipally owned public utility to receive unemployment compensation and that it is obligatory that contributions be collected and reported quarterly as pursuant to said Act for private employers coming thereunder having four or more employees. In support of this contention, appellees cite the Liability Referee interpretation of the words "all" and "any" as follows:
"The indefinite numeral adjective `all' means the whole of; the whole number or sum of; every member or individual component of; the whole number of, taken either collectively or distributively. The indefinite `any,' in the singular means one indiscriminately of whatever kind. Thus, each and all and every one of the employees, individually and collectively, of any municipally owned utility, irrespective of any number of its employees from one up, must be entitled to receive unemployment compensation to the same extent as any (one) employee of a private employer. The word `extent' here refers to maximum individual employee benefit rights and not to definite limits of `employer.'"
In C. & C. Dist. Transit Co., Inc. v. Mueller, Sec. of St. (1938), 213 Ind. 530, 12 N.E.2d 247, the court at page 534 said:

*408 "When used in a statute, the word "any" should be so construed as to make its meaning comport with the general scheme of the statute in which it is used."
It is the duty of a court in construing a statute to seek to discover and carry out the evident intention of the Legislature. In C. & C. Dist. Transit Co. v. Mueller, supra, the court set forth with approval this quotation at page 534:
"In the search for that intention the court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subjects, or relative subjects, whether in force or repealed; to contemporaneous legislative history, and to the evils and mischiefs to be remedied."
Assuming the Liability Referee is correct in his interpretation, but there remains, as stated by him, the fact that one employee of a public utility is entitled to receive unemployment compensation benefits to the same extent as one employee of a private employer. Just how the Referee's interpretation determines liability upon appellants-employers for payment of contributions under the Act we are unable to perceive.
Appellants allege that Appellees' Brief fails to comply with the requirements set forth in Rule 2-18 because of the failure by appellees to meet or avoid the alleged error as required by such rule. In view of the results of the consideration of this cause, we feel it unnecessary to take further cognizance of this alleged defect in Appellees' Brief by appellants.
No where in the Amendatory Act do we find that the municipally owned public utility is made an exception to the general rule as to the definition of an employer *409 under the Indiana Employment Act as set forth in Section 2 of Chapter 317 of Acts of 1955 and which Section was not amended nor repealed by the Amendatory Act of 1959, which amended Section 13 only of said 1959 Act. There appears to be no disagreement as to the fact that an employer must qualify himself or itself before the employees thereunder will be entitled to receive unemployment compensation.
This court is conversant with the statute and notes that the words "any" and "all" are used numerous times throughout the Act. In our judgment we deem it unnecessary to define each and every "any" and "all." Even in taking cognizance of appellees' definitions of said words, we also are mindful of the fact that these words have been given various definitions dependent upon the usage in each particular case. In order to obtain the intended meaning these words should be defined with a mind to logic and common sense and thence applied to the entire subject matter of the statutes and of the Act. It is our judgment that "any" and "all" in the case at bar refers to any and all employees and employers regardless as to number. The interpretation of the words "any" and "all" as set forth by the Referee and relied upon by the appellees cannot rest upon subsection (t) alone but must be taken in context with the entire Act, and is dependent upon Section 2 of Chapter 317 of 1955 Acts, where definitions are set forth for "Employment" and "Employer." (Our emphasis.)
It should be further noted that the word "same" is used twice in subsection (t), first, in the phrase, "to the same extent as any employee of a private employer," second, in the phrase, "shall have the same authority and duty in regard to municipally owned public utilities and their employees as it and they have to private employers and their employees." In our judgment the *410 Legislative mandate is clear and unambiguous. The words "same" and "same extent" mean precisely in the same manner and under the same qualifications as the private employer and his employee or employees. Supporting this view, subsection (t) further states that "each such municipally owned public utility shall be subject to this act as an employer and shall pay all taxes and contributions established, levied and assessed pursuant to this Act." (Our emphasis.) Since the term "employer" is not defined in this section, it is our judgment that the Legislature intended the municipally owned public utility to qualify in the same manner and be assessed by the same procedure as the private employer.
In stating that the municipally owned utility shall be subject to the Employment Security Act, it appears that the intent of the Legislature has been clarified by subsection (t) providing for the inclusion of municipally owned public utilities and their employees under the Act, but not establishing an exclusive position within the Amendatory Act for the municipally owned public utilities and their employees. (Our emphasis.)
The only sound and logical interpretation to be given the amendatory subsection (t), as pertains to the question now considered, is that municipally owned public utilities were thereby brought into classification as an employer under the Employment Security Act and that the employees of such utilities should be entitled to unemployment compensation benefits under and to the same extent as employees of a private employer. The amendment displays no intention of the Legislature to grant greater or more extensive rights to such public utility employees than are granted to employees of a private employer. Nor is there evinced any legislative intent to place the public utility as an *411 employer in a different category than a private employer or to in any wise alter the then existing conditions under which an employer may be subjected to a levy upon its payroll as its contribution to the benefit fund. Further, such an attempted classification may have posed serious questions as to the legality thereof.
A part of Chapter 305, Acts of 1959, Section 1 (t) in part is as follows:
"... all employees of any municipally owned public utility shall be entitled to receive unemployment compensation benefits to the same extent as any employee of a private employer; ..." (Our emphasis.)
Should the Legislature's intent have been to differentiate between the private employer and the municipally owned public utility employer, the above excerpt could have been written thus:
"... all employees irrespective of number of any municipally owned public utility shall be entitled to receive unemployment compensation benefits to the same extent as any employee of a private employer; ..." (Our emphasis.)
In light of the fact that the Legislature exempted a private employer from the mandatory provisions of the Employment Security Act who had less than four employees, compelling reasons were no doubt brought to bear which justified such exemptions by the Legislature.
This court finds that the decision of the Liability Referee is contrary to law and that the Liability Referee committed error in overruling the motion of appellants for a new trial, a reconsideration and a rehearing.
This court is further of the opinion that under the circumstances made apparent by the record before us *412 this cause should be reversed and judgment entered for appellants.
Reversed, with instructions for further proceedings not inconsistent herewith.
Pfaff, P.J., Kelley and Gonas, JJ., concur.
NOTE.  Reported in 171 N.E.2d 262.