William J. BRIGHTON, James Swift, and Robert Black, Defendants-Appellants,

v.

Steve SCHOFFSTALL, Plaintiff-Appellee.

No. 1–979A250.

Court of Appeals of Indiana, First District.

March 12, 1980.

---

William K. Teeguarden, Terre Haute, for defendants-appellants.

Gerald H. McGlone, Terre Haute, for plaintiff-appellee.

ROBERTSON, Presiding Judge.

William J. Brighton, James Swift and Robert Black (as members of the Police Pension Board) appeal a trial court decision which declared Steve Schoffstall (Schoffstall) the winner in a Pension Board election. The trial court also concluded that the Pension Board's action in declaring Robert Black a member of the Pension Board in place of Schoffstall was improper, null and void. We reverse and remand.

Briefly, the facts reveal that the Police Pension Board is composed of nine (9) members, five of whom are elected from the active members of the police department. As had been the custom, the election process consisted of a nominating election and a run-off election the following week, in which the four top vote getters in the nominating election competed for the two vacant seats on the pension board.

The situation became more complicated, however, because of *Ind.Code* 19–1–24–1, which is the applicable statute governing the Police Pension Fund. Although the statute allows the city substantial latitude in the administrative manner in which the election is conducted, the statute is very specific in mandating when the election must take place. In pertinent part, the statute states:

. . . The retired member and the active members of such police force who are elected to membership on the board *shall* be elected at a meeting of the members of the police force of such city, to be held at the central police station on the second Monday in February of each year: . . . . [Emphasis added.]

In this case, the nominating election was held on the second Monday in February, with the run-off election held the following week. The top four vote getters in the nominating election were Black, 35 votes; McKissick, 31 votes; Mayes, 26 votes; and Schoffstall, 17 votes. In the run-off election, McKissick received 54 votes; Schoffstall, 49 votes; Black, 44 votes; and Mayes, 36 votes. Following the election, police officer Richard Earney submitted a petition to contest the election to the Pension Board, which sustained the petition. The Pension Board declared Robert Black to have been elected, and not Schoffstall, since Black received more votes in the election held on the statutorily prescribed election date.

Pension Board has raised several issues on appeal. Due to our determination that the statute is mandatory, however, we need not address all the issues so raised.

■ When a court is called on to construe a statute, the first question that must be decided is whether the statute is uncertain and ambiguous so as to warrant judicial construction. *Indiana State Highway Commission v. White*, (1973) 259 Ind. 690, 291 N.E.2d 550. If the language used in the statute is clear and unambiguous, the court may not substitute language which it feels the legislature may have intended. *Ott v. Johnson*, (1974) 262 Ind. 548, 319 N.E.2d 622. Finally, if the intent of the statute is unmistakable and its meaning so plain and unambiguous that there is no room for judicial construction, the meaning plainly expressed therein will control. *State v. Turner*, (1979) Ind.App., 386 N.E.2d 208.

■ We consider the language of *Ind. Code* 19-1-24-1 to be clear and unambiguous. Therefore, there is no reason for this court to resort to the rules of judicial construction. The legislature has established a mechanism to assure the continued functioning of the Police Pension Board, and while the Board has been given great latitude in various administrative functions,

the legislature has mandated when the election of board members must be held. Schoffstall contends that if we interpret the statute to mean that the second Monday in February is the only day of the year on which an election can be held, that this interpretation could result in an absurdity under certain circumstances. While the calamities enumerated by Schoffstall are a possibility,[1] developing a remedy for such contingencies is a function more properly left to the legislative branch.

Schoffstall also argues that although the statute is worded "shall", in certain instances "shall" can be construed as "may" in order to further the overall intent of the statute. We are not persuaded that this construction is appropriate in this circumstance, however, because there is no ambiguity in the statute which would warrant a resort to such an interpretation.

■ Lastly, Schoffstall contends that the trial court's judgment seating himself as a member of the Pension Board should be affirmed on the basis of custom, since all prior elections had been carried out in the same manner and no prior election had been contested. Also in this regard, Schoffstall notes that longstanding administrative interpretation is considered persuasive. While it is true that legislative acquiescence may in certain instances legitimize various activities, the legislature must have knowledge of the particular act taking place, or there is nothing in which to acquiesce. As to Schoffstall's contention that past custom is sufficient to legitimize past procedure, we are not persuaded that this is sufficient to override a clear and unambiguous statutory procedure.

Finally, it must be noted that Schoffstall has included in his brief the Pension Board election results from 1971 through 1979 (1973 and 1976 excluded), which show the dates on which the nominating and run-off elections were held and the date of the second Monday in February. In 1972, 1975, 1977, and 1978, the run-off election was held on the date prescribed by the statute.

---

1. The calamities enumerated include fire, floods, earthquakes or other situations that might prevent the election from being held on the proper date.

At the very least, this evinces some prior awareness of the statutory mandate.

Therefore, based on a plain reading of the statute which we find to be clear and unambiguous in its meaning, we reverse the judgment of the trial court and remand for further action not inconsistent with this opinion.

Reversed and remanded.

NEAL and RATLIFF, JJ., concur.